PLAINTIFF'S MOTION TO AMEND

EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LEWIS-BURKE ASSOCIATES LLC** | ) | |
| **1341 G Street, NW, Eighth Floor** | ) | |
| **Washington, DC  20005** | ) | |
| | ) | **Civil Action No.** |
| **Plaintiff,** | ) | |
| | ) | **1:09-cv-00302** |
| **v.** | ) | |
| | ) | |
| **JOEL WIDDER** | ) | |
| **9509 Riley Road** | ) | |
| **Silver Spring, MD 20910** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Lewis-Burke Associates LLC ("Lewis-Burke" or "Company"), by and through

its undersigned counsel, brings this action seeking injunctive relief against and damages from its

former employee, Defendant Joel Widder ("Widder").

## NATURE OF ACTION

Plaintiff Lewis-Burke brings this action in order to enforce its contractual rights and to

protect its confidential information and trade secrets which are vital to the Company's success.

Lewis-Burke's former employee, Defendant Widder, announced his resignation from Lewis-

Burke in order to join Oldaker, Belair & Wittie LLP ("OBW"), a law firm with an affiliated

government relations and lobbying group that competes with Lewis-Burke in the government

relations and lobbying industry.  In violation of the provisions of his Non-Competition and

Confidentiality Agreement with Lewis-Burke, Widder took Lewis-Burke's confidential and

proprietary information and has used Lewis-Burke's confidential and proprietary information to

solicit Lewis-Burke's clients for competing business.

Widder has, impermissibly under contract and law, taken for his own use Lewis-Burke's confidential client information, trade secrets, and other proprietary information, which provides Lewis-Burke its competitive edge in the marketplace. Widder has used and will continue to use this information to solicit Lewis-Burke clients and divert business away from Lewis-Burke for the benefit of him and his current employer, OBW. Widder is also disseminating the information to OBW, potential clients, and others. In doing so, Widder is causing ongoing irreparable injury to Lewis-Burke.

In this action, Lewis-Burke asserts claims under Federal statutory and District of Columbia statutory and common law in order to protect its confidential information, trade secrets, and legitimate business interests. To remedy these claims, Lewis-Burke seeks injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Lewis-Burke Associates LLC is a Virginia limited liability company with its principal place of business at 1341 G Street NW, Eighth Floor, in Washington, DC 20005. The sole member of Lewis-Burke Associates LLC is April Burke, who is a resident of Virginia and domiciled therein. Lewis-Burke is a government relations, consulting, and lobbying firm specializing in advocating for the public policy interests of scientific research organizations, institutions of higher education, and other research and education organizations.

2.      Defendant Joel Widder is a former employee of Lewis-Burke who performed senior lobbyist duties. Widder is currently a partner at Oldaker, Belair & Wittie, LLP ("OBW"). Upon information and belief, Widder is a resident of 9509 Riley Road in Silver Spring, Maryland 20910 and is domiciled in the state of Maryland.

3.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based on Lewis-Burke's claim arising under the Computer Fraud and Abuse Act, Title 18 U.S.C. § 1030, *et*

*seq.*.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, in that there is complete

diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

4.      This Court has personal jurisdiction over Widder, and venue is proper in this District

pursuant to 28 U.S.C. § 1391(a), because Widder is currently employed in this District, he was

employed by Lewis-Burke in this District, he has breached and threatens to breach duties to Lewis-

Burke in this District, and a substantial part of the events giving rise to these claims occurred in this

District.

## FACTUAL BACKGROUND

### Lewis-Burke Associates LLC

5.      Lewis-Burke is a government relations, consulting, and lobbying firm specializing

in advocating for the public policy interests of scientific research organizations, institutions of

higher education, and other research and education organizations.  Lewis-Burke's specialized

expertise in content-based advocacy is sought by clients seeking to align their focus and

strengths with current public and political priorities.

6.      Lewis-Burke does business in the highly competitive government relations and

lobbying industry.  As a result, Lewis-Burke devotes significant time and resources to the

research and development of the processes, strategies, strategic plans, proposals and marketing

materials, PowerPoint files, analytical documents, pricing models, and other tools that Lewis-

Burke tailors to the benefit of the education and scientific research institutions that make up

Lewis-Burke's client base.  Lewis-Burke also invests a great deal of time and resources in

cultivating its client contacts and developing those professional relationships, which are critically

important to the success of Lewis-Burke's business.  All of this information, collectively referred

to herein as "Confidential and Proprietary Information," is treated as highly confidential within

Lewis-Burke, and its possession, use, or dissemination by persons outside Lewis-Burke would

diminish Lewis-Burke's competitive advantage and would, as a result, cause irreparable injury to Lewis-Burke's business.

7.     Lewis-Burke is careful to preserve the confidentiality of its Confidential and Proprietary Information.  For example, Lewis-Burke does not publicly disseminate its Confidential and Proprietary Information, and requires all employees of the Company, including Widder, to sign confidentiality agreements as a condition of their employment with the Company.  Lewis-Burke also maintains a secure computer network and declines to allow non-management employees (which included Widder) to have remote-computer access to the Company's network.

8.     To further protect Lewis-Burke's business interests, and as a condition to employment and access to Lewis-Burke's Confidential and Proprietary Information, Lewis-Burke requires employees like Widder to agree not to directly or indirectly solicit Lewis-Burke clients for two (2) years after the employee's departure.  This non-solicitation agreement extends to prohibiting former employees from assisting any person with whom the employee is affiliated from soliciting Lewis-Burke clients.

### Joel Widder

9.     Widder was employed as a senior lobbyist for Lewis-Burke from January 2003 until his resignation on September 24, 2008.  His responsibilities included consultation, lobbying, and providing analysis.  As a senior lobbyist, Widder had access to and was entrusted with Confidential and Proprietary Information.  Upon information and belief, Widder currently is a partner at OBW.

10.    Upon announcing his intent to leave Lewis-Burke on September 23, 2008, Widder explained that it was his intent to replicate the services that Lewis-Burke provides, specifically regarding the provision of government relations, consulting, and lobbying advocacy for scientific

research organizations.  Immediately thereafter, upon information and belief, Widder joined

OBW as a "non-attorney professional" partner.  OBW and its affiliate, The National Group LLP

("TNG") provide legislative and lobbying services similar to those provided by Lewis-Burke and

are thus competitors of Lewis-Burke.  For example, according to its website, TNG's client base

includes several institutions of higher education and research.

11.    Upon information and belief, Widder's work with OBW and TNG is substantially

similar to the work he performed when he was employed by Lewis-Burke.

### Widder's Employment Agreement with Lewis-Burke

12.    As a condition of employment, Widder entered into a Non-Competition and

Confidentiality Agreement ("Employment Agreement") with Lewis-Burke on December 19,

2002, and began working as a senior lobbyist at the Company as of January 2003.  A true and

correct copy of Widder's signed Employment Agreement is attached as Exhibit A.

13.    By signing his Employment Agreement with Lewis-Burke, Widder acknowledged

that his employment at Lewis-Burke was "conditioned on [his] agreement not to compete with

Lewis-Burke, or to disclose confidential Lewis-Burke information, both during and after [his]

employment with Lewis-Burke."  Ex. A at p. 1.  Widder acknowledged that the Company

depended upon his agreement, both during and after his employment, "to [make] sure that Lewis-

Burke's confidential information, and the training and knowledge gained from Lewis-Burke

employment, will not be used to compete with or to harm Lewis-Burke."  Ex. A at p. 1.

14.    In executing his Employment Agreement, Widder also acknowledged Lewis-

Burke's proprietary rights to its Confidential and Proprietary Information.  Widder agreed that

"during the term of [his] employment with Lewis-Burke, and at all times after the end of [his]

employment," he would "keep confidential all confidential and proprietary information, bidding

processes, strategies, techniques, contacts and materials of Lewis-Burke."  Ex. A ¶ 1(a).

15.     Widder's Employment Agreement defined the term "Confidential Information" to include (i) any data or information acquired by Widder during the course of his employment which, except for his position with Lewis-Burke, would not otherwise be available to him, such as reports, investigative studies, consultations, methodology, proposals, bidding practices, marketing techniques, strategies and other matters developed by, but not generally released by, Lewis-Burke; and (ii) client information, client lists, client contact information, data or services pertaining to any client of Lewis-Burke which is not publicly made available by Lewis-Burke or its client, including also any non-public information relating to the operating methods, plans or requirements of any client of Lewis-Burke.  Ex. A ¶ 1(a).  This information is the same as the Confidential and Proprietary Information as defined herein.

16.     Widder's Employment Agreement prohibited Widder from using the Company's Confidential and Proprietary Information for his own purposes or benefit or for any other purposes not directly related to Lewis-Burke business.  Ex. A ¶ 1(c).  Under the terms of the Agreement, Widder also can "not disclose the Confidential Information, either directly or indirectly, to any individual, business or entity, including also any government entity . . . not authorized in writing by Lewis-Burke to receive such information."  Ex. A ¶ 1(b).

17.     As a condition of his employment at Lewis-Burke and his access to Lewis-Burke's Confidential and Proprietary Information, Widder also agreed that, during his employment with the Company and for a period of two (2) years thereafter, he would not "directly or indirectly solicit Competing Business from, or perform any Competing Business for, any person either who was an active client of Lewis-Burke as of the termination of Widder's employment with the Company for any reason, or who had been an active Lewis-Burke client at any time within two (2) years prior to Widder's termination.  Ex. A ¶ 2.  Moreover, Widder

agreed not to assist any person with whom he is affiliated in any manner (such as an employee or partner), or from whom he receives any form of compensation, in soliciting Competing Business from, or performing Competing Business for, any of Lewis-Burke's clients.  Ex. A ¶ 2.

18.     Widder's Employment Agreement defined the term "Competing Business" to mean any and all business activities or services in which Lewis-Burke was engaged as of the date of Widder's termination, including any requests for proposals, submitted proposals or bids, or other business-related matters which were then pending or under active consideration by Lewis-Burke.  Ex. A ¶ 2.

19.     In his Employment Agreement, Widder acknowledged that his breach of the Agreement would "damage Lewis-Burke's client relationships and otherwise cause irreparable harm to Lewis-Burke which cannot readily be quantified or addressed by money damages." Ex. A ¶ 3(a).

**Widder's Transfer of Lewis-Burke Confidential and Proprietary Information and Solicitation of Lewis-Burke Clients**

20.     As a function of his responsibilities at Lewis-Burke, Widder regularly had access to Confidential and Proprietary Information which Lewis-Burke had expended a great deal of time and energy to develop.  In addition, through his work on behalf of Lewis-Burke, Widder possessed pertinent information regarding Lewis-Burke's client- and industry-specific needs, policies, and procedures.  None of this information is publicly available, and it is integral to Lewis-Burke's success as a competitor in the government relations, consulting, and lobbying space it occupies, to wit, expertise sought by scientific research and educational institutions.

21.     On September 23, 2008, Widder gave notice of his intent to resign from Lewis-Burke.  Widder informed the President and Founder of Lewis-Burke that he had accepted an

offer of employment with OBW and TNG and, in the course of that conversation, he made clear

that he intended to compete with Lewis-Burke.

22.     Widder's last day of employment at Lewis-Burke was September 24, 2008.

23.     Upon information and belief, Widder began working at OBW and TNG on

October 1, 2008.

24.     On September 30, 2008, Lewis-Burke sent Widder a letter reminding him of his

obligations under the Employment Agreement with Lewis-Burke, including the obligation not to

solicit or perform Competing Business services for Lewis-Burke clients and the obligation not to

use Lewis-Burke's Confidential and Proprietary Information for his own purposes or benefit or

for any other purpose not directly related to Lewis-Burke business.  Furthermore, Lewis-Burke

demanded in this letter that Widder return any Confidential and Proprietary Information in his

possession, custody, or control and that Widder return to Lewis-Burke immediately the

Company-issued computer flash drive that he still had in his possession.  A true and correct copy

of this letter is attached as Exhibit B.

25.     Lewis-Burke also sent letters to Frank Cushing and William Oldaker, partners at

OBW and TNG, to apprise them of Widder's continuing legal obligations to Lewis-Burke.

Specifically, in this letter, Lewis-Burke informed OBW and TNG that, as an employee of those

firms, Widder was prohibited from soliciting any clients of Lewis-Burke for Competing Business

or performing Competing Business services for such clients, and that Widder was also prohibited

from assisting OBW and TNG in soliciting any clients of Lewis-Burke for Competing Business

or performing Competing Business services for such clients.  In addition, the letter from Lewis-

Burke informed OBW and TNG that Widder was further prohibited from using any non-public

client information that he received during his employment with Lewis-Burke.  True and correct

copies of these letters are attached as Exhibits C and D, respectively.

26.     Pursuant to Lewis-Burke's cease-and-desist letter, Widder responded by sending a

letter dated October 7, 2008 to Lewis-Burke's Vice President for Finance and Administration,

enclosing a USB flash drive that he claimed he had often used for Lewis-Burke business.

Widder further represented in this letter that neither his flash drive, home computer, nor laptop

computer contained Confidential and Proprietary Information.  Widder also offered to allow

Lewis-Burke to examine his home computer and laptop computer "so you can be assured I do

not have any Lewis-Burke confidential information."  A true and correct copy of this letter is

attached as Exhibit E.

27.     Lewis-Burke engaged the services of a forensic expert, who examined Widder's

Lewis-Burke computer and the flash drive that Widder had sent to Lewis-Burke with his October

7, 2008 letter.  This review revealed a deliberate plan by Widder to obtain and use Lewis-

Burke's Confidential and Proprietary Information in violation of his Employment Agreement

with Lewis-Burke.

28.     Specifically, the expert's review revealed, among other things, that Widder had

accessed numerous Lewis-Burke files on the Lewis-Burke computer network and copied them

onto his personal USB flash drive prior to his departure, and then subsequently deleted them on

October 2, 2008 – after he had received the cease-and-desist letter from Lewis-Burke, and after

he had begun working for OBW and TNG.

29.     The forensic evidence demonstrated that almost two-dozen extremely confidential

Lewis-Burke files had been copied by Widder from his Lewis-Burke computer and Lewis-Burke

network onto his personal USB flash drive in the week prior to his departure, with most of those files being transferred on September 22, 2008, the day before Widder announced his resignation.

30.     The forensic evidence also indicated that, in addition to the USB flash drive that Widder had provided to Lewis-Burke, there had been several other USB devices plugged into Widder's Lewis-Burke desktop computer that have not been accounted for, and that a number of Lewis-Burke files had been accessed from Widder's Lewis-Burke desktop computer during his last afternoon of work at the Company.

31.     The forensic expert's examination revealed that a large Outlook Archive file had been copied onto Widder's USB flash drive from his Lewis-Burke desktop computer before his last day of work at the Company, and that it had been accessed by another Outlook client on or about October 2, 2008.

32.     In sum, this forensic examination showed that Widder had taken a significant number of files containing Confidential and Proprietary Information from Lewis-Burke, including extremely confidential files relating to Lewis-Burke clients, such as strategic plans, proposals, financial disclosure statements, and other client files.  These are files that were created by and for Lewis-Burke, and their protection is critical to Lewis-Burke's success.

33.     Widder had no valid business reason to make a personal copy of these Lewis-Burke materials, particularly since it was his intent to leave Lewis-Burke at least as early as August 2008.

34.     Upon information and belief, Widder took these confidential, proprietary Lewis-Burke materials for his own benefit and purpose, and in order to benefit his new employers, OBW and TNG.

35.     Widder is wrongly in possession or control of Lewis-Burke's Confidential and Proprietary Information.  His possession of this Confidential and Proprietary Information is injurious to Lewis-Burke's ability to maintain its competitive edge in the marketplace.  Absent continuing injunctive relief, Widder will wrongfully retain possession of the Confidential and Proprietary Information.  Upon information and belief, Widder has used and, in the absence of continuing injunctive relief, will continue to use this Confidential and Proprietary Information in efforts to divert business from Lewis-Burke.  Widder may also be disseminating these materials to his current employer, potential clients, and others.

36.     Upon further information and belief, Widder's conduct was and is in furtherance of a scheme to obtain and convert to his own use the Confidential and Proprietary Information contained in Lewis-Burke's records, including but not limited to Lewis-Burke's client names, addresses, telephone numbers, and contact information, and to convert Lewis-Burke's business model for the benefit of Widder and his new employers, OBW and TNG.

37.     Widder and, with his assistance, his current firm, OBW, have been actively soliciting Lewis-Burke clients.  Lewis-Burke clients that had terminated their relationships with Lewis-Burke around the time of Widder's resignation or shortly thereafter have since retained the services of Widder's firm, OBW, or its affiliate, TNG.

**COUNT I**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**18 U.S.C. § 1030 ET SEQ.**

38.     The allegations contained in paragraphs numbered 1 through 37 are incorporated by reference herein with the same force and effect as if set forth in full below.

39.     Widder was not authorized by Lewis-Burke to access, via its protected computer systems, the Confidential and Proprietary Information for his personal gain or that of a competitor.

40.     Through these actions, Widder has intentionally accessed a computer system without authorization and has exceeded his authority to obtain information from a protected computer in violation of 18 U.S.C. § 1030(a)(2)(C).

41.     Lewis-Burke has suffered damages and loss as a result of Widder's actions in an amount to be determined at trial, but, upon information and belief, the damages caused by Widder's theft of highly confidential and proprietary information far exceeds $5,000.  The reasonable expenditure of funds to conduct the forensic analysis of Widder's USB drive and Lewis-Burke's computer has exceeded $5,000.  In addition, although Lewis-Burke cannot be made whole simply by compensation for the compromised integrity and resulting reduced value of the Confidential and Proprietary Information, the damages related thereto far exceed $5,000.

42.     As a result of Widder's wrongful conduct, Lewis-Burke seeks damages in an amount to be determined at trial.

## COUNT II
## BREACH OF CONTRACT –
## FAILURE TO ABIDE BY REASONABLE PROVISION CONCERNING
## LEWIS-BURKE CONFIDENTIAL INFORMATION

43.     The allegations contained in paragraphs numbered 1 through 42 are incorporated by reference herein with the same force and effect as if set forth in full below.

44.     Widder is in breach of the Employment Agreement in that he has failed to keep confidential the Confidential and Proprietary Information.  *See* Ex. A ¶ 1(a).  In violation of the terms of his Employment Agreement, Widder has taken the Confidential and Proprietary Information for his own benefit in his new employment with OBW and TNG, and not for any purpose related to Lewis-Burke business.  *See* Ex. A ¶ 1(c).  Furthermore, upon information and belief, he has disclosed the Confidential and Proprietary Information to persons outside the Company without prior written authorization by Lewis-Burke.  *See* Ex. A ¶ 1(b).

45.     That Widder has been willing to breach his Employment Agreement repeatedly –
even going so far as to attempt to destroy evidence that he had copied electronic files containing
Confidential and Proprietary Information from Lewis-Burke after receiving a cease-and-desist
letter from the Company – indicates the likelihood that he will continue to violate his contractual
obligations under that Agreement.

46.     As a result of the foregoing, Lewis-Burke has suffered irreparable harm and loss.
Unless enjoined as requested herein, Widder will persist in his wrongful and unlawful activities
in continuing to improperly use Lewis-Burke's Confidential and Proprietary Information for his
own purpose and benefit, and Lewis-Burke will thereby continue to be irreparably harmed.

47.     Lewis-Burke has been and continues to be damaged by Widder's actions.  In
connection with its breach of contract claim, Lewis-Burke seeks damages in an amount to be
determined at trial.

**COUNT III**
**VIOLATION OF THE DISTRICT OF COLUMBIA**
**UNIFORM TRADE SECRET PROTECTION ACT**
**D.C. Code § 36-401, *et seq.***

48.     The allegations contained in paragraphs numbered 1 through 47 are incorporated
by reference herein with the same force and effect as if set forth in full below.

49.     In order to assist Widder in successfully serving Lewis-Burke's clients and
carrying out his job duties and responsibilities at the Company, Lewis-Burke provided him with
access to highly sensitive, proprietary, and confidential information that constituted trade secrets
subject to protection under the District of Columbia Uniform Trade Secret Protection Act, D.C.
Code § 36-401.  Examples include, but are not limited to, the following:

- Lewis-Burke's confidential and proprietary reports, investigative studies,
  consultations, methodology, proposals, bidding practices, marketing

- 13 -

techniques, strategies, and other matters developed by, but not generally
released by, Lewis-Burke;

- Lewis-Burke's client information, client lists, client contact information,
  data or services pertaining to any client of Lewis-Burke which is not
  publicly made available by Lewis-Burke or its clients, including also any
  non-public information relating to the operating methods, plans, or
  requirements of any client of Lewis-Burke;

- Lewis-Burke's proprietary methods, techniques, and strategies for
  providing government relations and lobbying services, including but not
  limited to pricing strategies, slide presentations, and strategic federal
  relations plans; and

- Other categories of confidential and proprietary information, including
  information stored on Lewis-Burke's secured computer databases.

50.     Lewis-Burke's trade secrets possess independent economic value by virtue of not

being generally known to, nor readily ascertainable through legitimate means by, other persons

who could benefit financially from its disclosure or use.

51.     Lewis-Burke has expended a great deal of time, money, and energy to develop

this information, which is integral to its success.

52.     Lewis-Burke undertook measures that were reasonable under the circumstances to

protect the secrecy of this information, such as by requiring employees like Widder to enter into

employment agreements containing the confidentiality provisions described above.

53.     Upon information and belief, Widder has used Lewis-Burke's Confidential and

Proprietary Information contrary to the binding contractual obligations of his Employment

Agreement with the Company.  That is, Widder used this information for his own benefit and in

furtherance of his current employment with OBW and TNG.

54.     At the time Widder misappropriated Lewis-Burke's trade secrets for his own

benefit, Widder acted willfully and maliciously, in that his actions were undertaken with a

conscious disregard for Lewis-Burke's rights.  Widder knew or should have known that he was

taking and using for improper purposes trade secrets that had been acquired through improper means.  Namely, Widder breached his duty to protect the secrecy of Lewis-Burke's Confidential and Proprietary Information as required by the terms of his Employment Agreement with the Company by, among other things, surreptitiously copying and transferring electronic files containing Confidential and Proprietary Information immediately prior to announcing his departure, lying about his possession of such Confidential and Proprietary Information, and using the Confidential and Proprietary Information for his own benefit.  At the time Widder did so, he knew or had reason to know that his knowledge of Lewis-Burke's Confidential and Proprietary Information and trade secrets had been acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.  Specifically, the terms of Widder's Employment Agreement made clear that Lewis-Burke's Confidential and Proprietary Information was to be used only for purposes of the Company's business and that any other use or disclosure of such information was strictly limited, demonstrating that his surreptitious copying of the Confidential and Proprietary Information just prior to his announcement of departure was intentional and planned.

55.     As a consequence of the foregoing, Widder has misappropriated and misused Lewis-Burke's Confidential and Proprietary Information, and Lewis-Burke has suffered, and will continue to suffer, irreparable harm and loss.  Unless enjoined as requested herein, Widder will persist in his wrongful and unlawful possession and activities, and Lewis-Burke will continue to be irreparably harmed.

56.     Furthermore, the foregoing conduct has damaged Lewis-Burke by reducing the utility and value of its Confidential and Proprietary Information.  In connection with its misappropriation claim, Lewis-Burke seeks damages in an amount to be determined at trial.

**COUNTS IV AND V**
**BREACH OF FIDUCIARY DUTY AND BREACH OF DUTY OF LOYALTY**

57.     The allegations contained in paragraphs numbered 1 through 56 are incorporated by reference herein with the same force and effect as if set forth in full below.

58.     As a senior lobbyist at Lewis-Burke, Widder occupied a position of trust and confidence with access to the Company's confidential and commercially sensitive information, and he thus owed fiduciary duties to Lewis-Burke, including a duty of loyalty.

59.     As described fully above, Widder violated those fiduciary duties when he misappropriated Lewis-Burke's trade secrets and misused the Company's Confidential and Proprietary Information for his own personal benefit and for the benefit of a Lewis-Burke competitor (*e.g.*, TNG).  Specifically, Widder misused his access to Lewis-Burke's Confidential and Proprietary Information concerning its clients and methods in order to benefit therefrom, and to solicit those clients for the benefit of OBW and TNG.

60.     As a consequence of the foregoing, Lewis-Burke has suffered and will continue to suffer irreparable loss, as well as damages in an amount to be determined at trial.

**COUNT VI**
**UNFAIR COMPETITION**

61.     The allegations contained in paragraphs numbered 1 through 60 are incorporated by reference herein with the same force and effect as if set forth in full below.

62.     The foregoing conduct of Widder constitutes an unfair method of competition. Through Widder's bad faith misappropriation of Lewis-Burke's Confidential and Proprietary Information, Widder has benefited unfairly, in that he is wrongfully possessing and has misused Lewis-Burke's Confidential and Proprietary Information for the benefit of the new enterprises in which he is now a partner.

63.     As a result of the foregoing, Lewis-Burke has suffered and will continue to suffer irreparable harm and loss.  Unless enjoined as requested herein, Widder will persist in his wrongful and unlawful possession and activities, and Lewis-Burke will thereby continue to be irreparably harmed.

64.     In addition, Lewis-Burke has been and continues to be damaged by Widder's actions.  Lewis-Burke seeks judgment against Widder in an amount to be determined at trial.

**COUNT VII**
**BREACH OF CONTRACT –**
**FAILURE TO ABIDE BY REASONABLE PROVISION CONCERNING**
**NON-SOLICITATION OF LEWIS-BURKE CLIENTS**

65.     The allegations contained in paragraphs numbered 1 through 64 are incorporated by reference herein with the same force and effect as if set forth in full below.

66.     Widder breached his Employment Agreement with Lewis-Burke when he directly and/or indirectly solicited Competing Business from Lewis-Burke clients on behalf of OBW and TNG.  *See* Ex. A at ¶ 2.  Widder also breached his Employment Agreement with Lewis-Burke when he assisted others at OBW in their solicitation of such Competing Business.  *See* Ex. A at ¶ 2.

67.     That Widder has been willing to breach his Employment Agreement repeatedly – even after receiving a cease-and-desist letter from Lewis-Burke – indicates the likelihood that he will continue to violate his contractual obligations under that Agreement.

68.     As a result of the foregoing, Lewis-Burke has suffered irreparable harm and loss. Unless enjoined as requested herein, Widder will persist in his wrongful and unlawful activities in soliciting Lewis-Burke clients and providing assistance to OBW in soliciting Lewis-Burke clients, and Lewis-Burke will thereby continue to be irreparably harmed.

69.     In connection with its breach of contract claim, Lewis-Burke seeks judgment against Widder in an amount to be determined at trial for compensatory damages.

### COUNT VIII
### TORTUOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS

70.     The allegations contained in paragraphs numbered 1 through 69 are incorporated by reference herein with the same force and effect as if set forth in full below.

71.     Lewis-Burke has valid and continuing present and prospective business relationships or expectancies with its clients, which bear a probability of future economic benefit to the Company.  Lewis-Burke is also entitled to the benefit of compliance with the reasonable terms of its Employment Agreement with Widder.

72.     Widder knew and continues to know of the existence of these contractual and business relationships.  Through the conduct described fully above, Widder intentionally interfered with Lewis-Burke's valid business expectancies by using the Company's Confidential Information.  Widder did so with the specific intent to harm these existing business relationships, and to erode Lewis-Burke's goodwill with its clients.

73.     The actions of Widder were and are without privilege or justification, and were engaged in through improper means including breach of contract, breach of fiduciary duties, and misappropriation of trade secrets.

74.     As a result of Widder's conduct, Lewis-Burke's goodwill with its clients has been diminished.  Widder has diverted business to OBW and TNG that would have gone to Lewis-Burke.  Moreover, Widder is attempting, and will continue to attempt, to divert other business to OBW and TNG that would have gone to Lewis-Burke.

75.     The foregoing conduct by Widder constitutes tortious interference with contract and business relations.

76.     As a consequence of the foregoing, Lewis-Burke has suffered and will continue to suffer irreparable harm and loss.  Unless enjoined as requested herein, Widder will persist in his wrongful and unlawful activities, and Lewis-Burke will be irreparably harmed.

77.     In addition, Lewis-Burke has been and continues to be damaged by Widder's actions, and Lewis-Burke seeks judgment against Widder in an amount to be determined at trial.

**COUNT IX**
**INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE**

78.     The allegations contained in paragraphs numbered 1 through 77 are incorporated by reference herein with the same force and effect as if set forth in full below.

79.     Lewis-Burke is entitled to the benefit of compliance with the reasonable terms of its Employment Agreement with Widder, which provides the Company with the right to specifically enforce the provisions of this Agreement and seek a temporary and permanent injunction against Widder as appropriate.  Ex. A ¶ 3(a).

80.     Lewis-Burke is also entitled to the protection of its Confidential and Proprietary Information.

81.     Widder's actions, as described above, are causing ongoing irreparable injury to Lewis-Burke which includes, but is not limited to, the following: possession, use, disclosure, and loss of the confidentiality of trade secrets and other propriety information which are solely the property of Lewis-Burke; loss of business; loss of the confidence and trust of Lewis-Burke's clients; loss of goodwill and business reputation; threat to enforcement of reasonable contracts; and present and future economic loss which is presently unascertainable.

82.     In his Employment Agreement with Lewis-Burke, Widder acknowledged that breach of the Agreement by him would cause "irreparable harm" to the Company, and he

consented to the entry of temporary and permanent injunctive relief against such breach.

Ex. A ¶ 3(a).

83.     Accordingly, Lewis-Burke seeks a permanent injunction restraining Widder from

violating Lewis-Burke's contractual, statutory, and common law rights.

## DEMAND FOR JUDGMENT

84.     WHEREFORE, Plaintiff Lewis-Burke Associates LLC respectfully requests that

this Court grant the following relief:

      a.      Permanently enjoin Widder from using for any purpose and sharing with anyone the Confidential and Proprietary Information;

      b.      Enjoin Widder from contacting clients of Lewis-Burke for purpose of soliciting their business, pursuant to the Employment Agreement;

      c.      Award Lewis-Burke damages in an amount to be determined at trial to compensate it for all losses suffered as a result of Widder's conduct;

      d.      Award Lewis-Burke exemplary damages in amount to be proved at trial;

      e.      Award Lewis-Burke such reasonable attorneys' fees, interest, and costs as otherwise provided by law; and

      f.      Award such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

85.     Plaintiff Lewis-Burke Associates LLC requests a jury trial for all issues so triable.

Dated:  February _____, 2010                          Respectfully submitted,


                                            _____/s/___Rebecca Woods_____
                                            SEYFARTH SHAW LLP
                                            975 F Street, N.W.
                                            Washington, DC  20004
                                            Rebecca Woods (DC Bar #468495)
                                            rwoods@seyfarth.com
                                            Reenah L. Kim (DC Bar #478611)
                                            rkim@seyfarth.com
                                            Telephone:  202-463-2400
                                            Facsimile:   202-828-5393

                                            *Counsel for Plaintiff*
                                            *LEWIS-BURKE ASSOCIATES LLC*