# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**LEWIS-BURKE ASSOCIATES LLC,**

    Plaintiff,

    v.

**JOEL WIDDER,**

    Defendant.

Civil Action No. 09-302 (JMF)

## MEMORANDUM OPINION

This case is before me for all purposes, including trial. It was scheduled to go to trial in February of this year; however, on the eve of the pre-trial conference, defendant filed a motion to dismiss based on lack of subject-matter jurisdiction, and the plaintiff filed a motion to amend the complaint. Due to the pending motion and the extreme weather conditions at the time of the scheduled trial, I found that it was both impossible and improvident to proceed to trial as originally scheduled. Memorandum Order [#44], February 16, 2010. I will now address all remaining motions before the Court, in the hopes of bringing this case to its conclusion.

### I. Background

Plaintiff brings this case against Joel Widder, a former employee, alleging that he violated a Non-Competition and Confidentiality Agreement that he had entered into with plaintiff. Complaint ("Compl.") ¶¶ 9-19. According to plaintiff, Widder took confidential and proprietary information with him when he left the firm and solicited clients for a competing business. Id. at ¶ 34. Plaintiff filed a motion for a temporary restraining order, which I granted in part, enjoining

defendant from (1) using for any purpose or sharing with anyone confidential or proprietary information belonging to the plaintiff; and from (2) contacting plaintiff's current and former clients for purposes of soliciting them. Order Granting in Part and Denying in Part Motion for a Temporary Restraining Order [#4], February 19, 2009. I also ordered the parties to discuss the most appropriate means of preserving relevant electronically stored information ("ESI") and protecting privileged or confidential information contained therein. Id. The parties submitted their report on the ESI, and I issued an order on the review of electronic devices. Order Regarding Review of Electronic Devices [#11], March 13, 2009. Discovery closed on October 15, 2009, and on November 13, 2009 plaintiff filed a motion to compel production of documents and a motion to compel compliance with document subpoenas. See Plaintiff's Motion to Compel Production of Documents [#26]; and Plaintiff's Motion to Compel Compliance with Document Subpoenas [#27]. Defendant did not submit any opposition to the motions, and I granted the motions on December 8, 2009. On January 8, 2010, plaintiff filed a motion for sanctions, which is currently pending before me, in relation to the two motions to compel. See Plaintiff's Motion for Sanctions [#29] ("Pl. Mot. for Sanctions"). On January 28, 2010, plaintiff filed a motion *in limine* that sought to exclude certain testimony and to preclude defendant from introducing into evidence a change in Lewis-Burke Associates LLC's ("Lewis-Burke") commission policy. Plaintiff's Motion *In Limine* [#32] ("Pl. Mot. *In Limine*"). On February 8, 2010, defendant filed a motion to dismiss for lack of subject-matter jurisdiction. Motion to Dismiss [#38] ("Mot. to Dismiss"). The parties then filed their pre-trial statement on February 11, 2010, and plaintiff filed a motion to amend the same day. Plaintiff's Motion to Amend Complaint [#42] ("Mot. to Amend"). The Court was closed, due to inclement weather, from

noon on February 5, 2010 until 10:00 am on February 12, 2010, the day of the pre-trial conference. Thus, because the Court was closed for this long period of time, the motion to dismiss, motion to amend, and pre-trial statements were not accessible to the Court until February 12, 2010, the day of the pre-trial conference.

In light of the pending motions, I continued the trial until the pending motions were resolved. At the pre-trial conference, I determined that I would hold an evidentiary hearing regarding the motion for sanctions. That hearing was to be set after the scheduled jury selection; however, in light of the continuance of the trial, the hearing was not held. I will reset the evidentiary hearing on the motion for sanctions in a separate order. I will address the remaining motions in turn.

## II. Motion to Dismiss

Defendant moves to dismiss the case for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Mot. to Dismiss 1. Defendant argues that the federal court's jurisdiction over the matter is predicated on plaintiff's claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*,[1] and that plaintiff failed to meet the jurisdictional threshold for the claim. Mot. to Dismiss 1. Rule 12(b)(1) concerns the power of the Court to hear plaintiff's case; as such, a party may raise the objection that a federal court lacks subject-matter jurisdiction at any stage of the litigation. Fed. R. Civ. P. 12(b)(1); Ghawanmeh v. Islamic Saudi Academy, 672 F. Supp. 2d 3, 7 (D.D.C. 2009) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); and Casanova v. Marathon Corp., 256 F.R.D. 11, 12

---

[1] All references to the United States Code or the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

(D.D.C. 2009)).  Thus, "'a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority.'" Ghawanmeh, 672 F. Supp. 2d at 7 (quoting Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001)).

Defendant also invokes Rule 12(b)(6) of the Federal Rules of Civil Procedure as grounds for dismissal for plaintiff's failure to state a CFAA claim. Mot. to Dismiss 1.  The Federal Rules of Civil Procedure require a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The pleading should, thus, "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  More than a mere "formulaic recitation of the elements of a cause of action" must be alleged to survive a motion to dismiss. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).  Thus, for a complaint to survive a motion to dismiss, "[it] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

The CFAA is a criminal statute; however, subsection (g) of the statute provides a civil cause of action to "any person who suffers damage or loss by reason of a violation" of the CFAA. 18 U.S.C. § 1030(g).  Under the statute, such a person may obtain compensatory damages and injunctive relief or other equitable relief, but only if the conduct leading to the violation of the CFAA involves one of the factors "set forth in subclauses (I), (II), (III), (IV), or (V) of subsection

4

(c)(4)(A)(i)." Id. The conduct relevant in this case is set forth in 18 U.S.C. § 1030(c)(4)(A)(i)(I), which states that the CFAA is violated when there is a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). Under the statute, loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Thus, a "private plaintiff must prove that the defendant violated one of the provisions of § 1030(a)(1)-(7), and that the violation involved one of the factors listed in § 1030(a)(5)(B)." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1131 (9th Cir. 2009).

Plaintiff alleges that defendant violated subsection (a)(2) of the CFAA, which prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2). Under the statute, "exceeds authorized access" is defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Further, a "protected computer" means "a computer . . . which is used in or affecting interstate or foreign commerce or communication . . ." Id. at (e)(2)(B).

Therefore, to bring an action successfully under 18 U.S.C. § 1030(g) based on a violation of 18 U.S.C. § 1030(a)(2), plaintiff must show that defendant:

> (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct

5

> involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value.

Brekka, 581 F.3d at 1132.

Plaintiff alleges that defendant "was not authorized by Lewis-Burke to access, via its protected computer systems, the Confidential and Proprietary Information for his personal gain or that of a competitor." Compl. ¶ 39. Further, it is through these actions that defendant "has intentionally accessed a computer system without authorization and has exceeded his authority to obtain information from a protected computer in violation of 18 U.S.C. § 1030(a)(2)(C)." Id. at ¶ 40. Plaintiff further alleges that it has suffered damages and loss a result of defendant's action in an amount to be determined at trial. Id. at ¶ 41. Nevertheless, upon information and belief, plaintiff alleges "the damages caused by Widder's theft of highly confidential and proprietary information far exceeds (sic) $5,000," that "the reasonable expenditure of funds to conduct the forensic analysis of Widder's USB drive and Lewis-Burke's computer has exceeded $5,000," and that the damages due to compromised integrity and the resulting reduced value of the Confidential and Proprietary Information because of Widder's actions far exceed $5,000. Id.

Defendant argues that the complaint "fails to make sufficient allegations of lack of authorization on defendant's part in accessing or copying Lewis-Burke's computer data." Mot. to Dismiss 4. Further, defendant argues that "the complaint fails to allege damage or loss within the statutory definition and fails to establish that the $5,000 jurisdictional threshold was met." Id. I will address each of these in turn.

A. Access Without Authorization or Exceeding Authorization

The complaint alleges that when defendant accessed and obtained data from the computer for personal use or that of a competitor, he acted without authorization or in excess of the authorization he had to access that data. Compl. ¶¶ 39-40. In other words, according to plaintiff, the defendant's authorization to access certain information turns on defendant's intent for using the information once he obtained it. There is currently a split among the circuits that have considered this question, but the United States Court of Appeals for the District of Columbia Circuit has not yet considered the issue.

Plaintiff relies on a line of cases, referred to as the Citrin cases, which determine whether authorization exists in light of a person's duty of loyalty. See Int'l Airport Ctrs., LLC v. Citrin, 440 F.3d 418, 420-421 (7th Cir. 2006). In Citrin, Judge Posner determined that when a contractor breached his duty of loyalty, his authorization to use an employer-provided laptop ceased because his interests were adverse to the interests of the employer. Id. at 420. Thus, for the Seventh Circuit, and courts following Citrin, violating the duty of loyalty or acting with interests adverse to the employer voids the authorization an employee may have to access the computer. Id. at 421 (citing State v. DiGiulio, 835 P.2d 488, 492 (Ariz. 1992). Plaintiff adopts this argument and insists that defendant's authorization ceased when he decided to leave the firm and join a competing institution.

Defendant, however, urges the Court to follow the Brekka line of cases. In Brekka, the Ninth Circuit Court of Appeals found that the plain language of the statute should be understood to mean that when "an employer gives an employee permission to use [a company computer],"

the employer is giving that "employee 'authorization' to access [it]." Brekka, 581 F.3d at 1133.

Thus, according to Brekka, "for purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations." Id. Only the employer's decision "to allow or to terminate an employee's authorization to access a computer . . . determines whether the employee is with or 'without authorization.'" Id. "Exceeds authorized access" is defined by the statute as "access[ing] a computer with authorization and [using] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). The court in Brekka understood this to mean that "for purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations." Brekka, 581 F.3d at 1133. Thus, according to Brekka, an employer's decision to allow or terminate an employee's authorization is the determining factor as to whether the employee is with or without authorization. Id.

In this case, there is no dispute that Widder was still an employee of Lewis-Burke when he allegedly copied certain files to a thumb drive. Plaintiff claims that some of the access occurred on defendant's very last day as an employee of plaintiff; however, it still occurred while he was in the employ of plaintiff, and plaintiff has not alleged to have terminated his authorization to access the computer before he left its employ. There is an allegation that the forensic exam demonstrated that certain files were accessed from the thumb drive after Widder was no longer employed by Lewis-Burke; however, there is no allegation that Widder accessed his Lewis-Burke computer or the server after his employment with it ended. The CFAA is

8

concerned with access to a computer; Widder's alleged access to data on a thumb drive would fall outside of plaintiff's CFAA claim.

In determining whether Widder exceeded his authorization, I am persuaded by the Brekka line of cases, which have recently gained critical mass. See, e.g., Nat'l City Bank, N.A. v. Republic Mortgage Home Loans, LLC, No. 09-CV-1550, 2010 WL 959925, at *2 (W.D. Wash. Mar. 12, 2010); Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc., 690 F. Supp. 2d 1267, 1272 (M.D. Ala. 2010); ReMedPar, Inc. v. AllParts Medical, LLC, 683 F. Supp. 2d 605, 611 (M.D. Tenn. 2010). In Brekka, the court adopts a statutory interpretation of the CFAA that reflects the plain reading of the statute. See Brekka, 581 F.3d at 1135. In doing so, the court determines that "'authorization' depends on actions taken by the employer." Id. Thus, as Brekka notes:

> Nothing in the CFAA suggests that a defendant's liability for accessing a computer without authorization turns on whether the defendant breached a state law duty of loyalty to an employer. If the employer has not rescinded the defendant's right to use the computer, the defendant would have no reason to know that making personal use of the company computer in breach of a state law fiduciary duty to an employer would constitute a criminal violation of the CFAA. It would be improper to interpret a criminal statute in such an unexpected manner. See United States v. Carr, 513 F.3d 1164, 1168 (9th Cir. 2008).

Brekka, 581 F.3d at 1135.

I believe that the D.C. Circuit, faced with this issue, would rule in a manner consistent with both the Brekka cases and the plain meaning of the statute. The interpretation proposed by Citrin would mean that the same employee might have different authorization to access the same document on the same computer throughout his or her employ. For example, an employee might

9

generate a report during the course of his employment, to which he would have authorized access. If, as time progressed, the employee began looking for employment elsewhere, and he accessed the report to refresh his memory as to what he did on the report so that he could better describe his skills and abilities on his résumé or in an interview, under Citrin, he would have accessed the report without authorization. Then, if the employee was internally promoted, decided not to seek outside employment, and accessed the report to provide an example to one of his new subordinates of how he liked reports written, his interests would again be aligned with the employer, and his access would be authorized. In the extreme example, the same employee's authorization to access a document could concurrently be both with authorization and exceeding authorization. For example, the employee could have authority to access a report to e-mail it out for a superior to review, but his authorization might be exceeded if he then also decided to blind copy his personal e-mail account, so that he would have a copy of the report to use as a writing sample for a future job search. Congress could not have intended a person's criminal and civil liability to be so fluid, turning on whether a person's interests were adverse to the interests of an entity authorizing the person's access. See, e.g., S. Rep. No. 99-432, at 21 (1986), as reprinted in 1986 U.S.C.C.A.N. 2479, 2494-95 (discussing amendment that "remove[d] from the sweep of the statute one of the murkier grounds of liability, under which [an] employee's access to computerized data might be legitimate in some circumstances, but criminal in other (not clearly distinguishable) circumstances that might be held to exceed his authorization"). Such an interpretation is not only confusing, but antithetical to the rule of lenity, which forbids the Court from "'interpret[ing] a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress

intended.'" United States v. Villanueva-Sotelo, 515 F.3d 1234, 1246 (D.C. Cir. 2008) (quoting Ladner v. United States, 358 U.S. 169, 178 (1958)). The CFAA is primarily a criminal statute, with a civil cause of action, and a court is bound to interpret the statute consistently; thus, the rule of lenity must be considered even in its civil application. See Leocal v. Ashcroft, 543 U.S. 1,12 n.8 (2004).

The CFAA was designed primarily to deter computer hacking. See A.V. *ex rel.* Vanderhye v. iParadigms, LLC, 562 F.3d 630, 645 (4th Cir. 2009). Whatever Widder is alleged to have done, he did not hack into the computer or access it without authorization. Further, he had valid authorization to access the computer, and did not exceed that authorization by accessing information that Lewis-Widder had indicated he was not entitled to access. See, e.g., Brekka, 581 F.3d at 1133. Whether Widder had permission to copy documents onto his thumb drive or to subsequently use the data from a non-Lewis Burke computer, after he had left its employ, is not a question that relates to his liability under the CFAA. "'Exceeds authorized access' should not be confused with exceeds authorized use." Bell Aerospace Servs., Inc., 690 F. Supp. 2d at 1272-73, (citing Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1343 (N.D. Ga. 2007)).

I will grant defendant's motion to dismiss the CFAA claim. Defendant, however, also seeks to dismiss the entire case, based on lack of subject-matter jurisdiction, arguing that the Court only has jurisdiction over the other claims via supplemental jurisdiction. Plaintiff counters that the Court has diversity jurisdiction and has moved to amend the complaint to reflect this. I now will consider plaintiff's motion to amend.

### III. Motion to Amend

Plaintiff's initial response to defendant's motion to dismiss was to file a motion to amend the complaint. See Mot. to Amend. On the eve of trial, plaintiff presumably thought that the most expeditious way to oppose defendant's motion to dismiss was to ensure that the Court had subject-matter jurisdiction by amending its complaint to allege diversity jurisdiction.

Rule 15 of the Federal Rules of Civil Procedure governs the amending and supplementing of pleadings. See Fed. R. Civ. P. 15. Rule 15(a)(2) allows a party to amend its pleading with the written consent of the opposing party or the court's leave, noting that "the court should freely give leave when justice so requires." Id. "The decision to grant or deny leave to amend is within the sound discretion of the trial court, [and] it is an abuse of discretion to deny leave without a sufficient reason;" however, the liberal standard by which a court may grant leave to amend does have its limitations. See, e.g., Becker v. District of Columbia, 258 F.R.D. 182, 184-86 (D.D.C. 2009) (citing Dove v. Wash. Metro. Area Transit Auth., 221 F.R.D. 246, 247 (D.D.C. 2004)). While the Supreme Court has instructed that "the leave to amend shall be 'freely given,'" it also provides examples of when such leave may be denied, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); see also Belizan v. Hershon, 434 F.3d 579, 582 (D.C. Cir. 2006). The party opposing the amendment bears the burden of showing why leave should not be granted. Becker, 258 F.R.D. at 184 (citing Dove, 221 F.R.D. at 247)).

Defendant asserts that the motion should be denied because: (1) the amendment would be

futile; (2) the amount in controversy is insufficient to trigger the Court's jurisdiction; and (3) denying the motion would allow for "an orderly exploration of the jurisdictional issue" raised by defendant. Defendant's Opposition to Motion to Amend Complaint [#43] ("Def. Opp. to Amend") at 2-11. The third point is moot, as I have explored above the jurisdictional issue raised by defendant. Thus, I will consider the first two points.

Defendant claims that the amendment would be futile. While a court may deny a motion to amend on the grounds of futility,[2] it may do so only "if the proposed claim would not survive a motion to dismiss." James Madison Ltd. by Hecht v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (citing Foman, 371 U.S. at 181-82; Moldea v. New York Times, 22 F.3d 310, 319 (D.C. Cir.), cert. denied, 513 U.S. 875 (1994)). Defendant attacks plaintiff's claim of diversity jurisdiction on two fronts: (1) plaintiff's amended complaint alleges diversity as of the date of the amendment, and not at the time the action commenced, requiring the Court to draw an inference; and (2) "the Second Amended Complaint [does] not rule out the possibility that the LLC had other 'members' of unknown citizenship at the time the case was filed." Def. Opp. to Amend 3. Defendant argues that "the federal pleading standard . . . is not so flexible as to allow plaintiff to demand the [C]ourt's acceptance of all possible inferences,"[3] but then he asks the Court to infer that the parties' citizenship at the time of the motion to amend was different than it was when the complaint was filed, without providing any indication, other than speculation, as to why.

The standard of finding futility is whether or not the amendment would survive a motion

---

[2] Foman v. Davis, 371 U.S. at 182.

[3] Def. Opp. to Amend 4 (citing Iqbal, 129 S. Ct. 1937 (2009); Twombly, 550 U.S. 544 (2007)).

13

to dismiss. James Madison Ltd. by Hecht, 82 F.3d at 1099. When considering a Rule 12(b)(1) motion to dismiss, a court may consider materials outside of the pleadings. Lipsman v. Sec'y of Army, 257 F. Supp. 2d 3, 6 (D.D.C. 2003) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)). Plaintiff's reply brief in support of its motion to amend includes a declaration by April L. Burke, which clearly states that Burke is both the sole member of Lewis-Burke and has continuously resided in Virginia. Plaintiff's Reply Memorandum in Support of Its Motion to Amend Complaint [#48] at Ex. A. Widder admits to residing in Maryland. See Answer to Plaintiff's First Amended Complaint [#25] at ¶ 2. In light of this, I cannot find that plaintiff's proposed amendment would be futile.

Defendant also claims that plaintiff's claim of $75,000 is a bald assertion and that "plaintiff fails to make any allegations that allow the [C]ourt to assess the validity of the claim that the amount in controversy exceeds $75,000." Def. Opp. to Amend 4. Plaintiff's proposed Second Amended Complaint does allege that the amount in controversy exceeds $75,000. See Mot. to Amend, Ex. 1 at ¶ 3. Nevertheless, defendant wants the Court to deny plaintiff's motion to amend and refer to its damage calculations as fanciful. Mot. to Amend 5. A court should be "very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." Rosenboro v. Kim, 994 F.2d 13, 17 (D.C. Cir. 1993). In the parties' joint pretrial statement, plaintiff claims to have calculated damages to be $834,213. See Joint Pretrial Statement [#35] at 16. Defendant characterizes these calculations as "beyond speculation" and "into the realm of fantasy," however, the Court may dismiss the case (or deny a motion to amend), if "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . ." Rosenboro, 994 F.2d at 17. It is not apparent

14

from the face of the pleadings, "to a legal certainty," that plaintiff cannot recover in excess of $75,000. I will grant plaintiff's motion to amend.

### III. Motion *In Limine*

Plaintiff seeks to exclude from trial: (1) evidence of communications in September and October 2008 between April Burke of Lewis-Burke and Andrew Givens of Public Broadcasting Service ("PBS"), a client of Lewis-Burke, regarding Widder's departure and Lewis-Burke's work for PBS; and (2) "any defense by Widder at trial that a putative change in his compensation at Lewis-Burke somehow excuses his breach of his Non-Competition and Confidentiality Agreement with Lewis-Burke ('Non-Compete')." Memorandum of Points and Authorities in Support of Plaintiff's Motion In Limine [#32] ("Memo. to Mot. *in limine*") at 1.

#### A. Introduction of E-mail Communications between Burke and Givens

Plaintiff seeks to exclude evidence of the communications between Burke and Givens. Specifically, plaintiff argues that DEX #1, a series of e-mail exchanges between Burke and Givens, should be excluded on the following grounds: (1) that defendant failed to assert waiver as an affirmative defense in his original answer or in his answer to plaintiff's amended complaint; (2) that the defense is futile, irrelevant, and predicated on inadmissible hearsay; and (3) that its admission would be unduly prejudicial. Id. at 2. Defendant claims that it will call Givens to testify at trial, and that his testimony will "show that plaintiff failed to show certain elements of its *prima facie* case." Defendant's Opposition to Motion In Limine [#34] ("Def. Opp. Mot. *in limine*") at 1-2. Thus, according to defendant, the evidence does not implicate an affirmative defense. Id.

While motions *in limine* can be useful, on occasion, they can create confusion because it

is impossible to predict confidently the exact flow and significance of the evidence elicited at trial. It may be helpful to clear some brush away to expose what really is at stake.

An e-mail exchange between Burke and Givens is Exhibit 1 to Plaintiff's motion. See Pl. Mot. *In Limine* at Ex. 1. In the opening e-mail, dated March 24, 2008, Burke indicates to Givens that she has the "distinct feeling" that Givens knows that defendant, Joel Widder, is leaving plaintiff's employ to go to work for what Burke calls "the National Group/Oldecker law firm." Id. She notes that since this entity consists of "guys [who] are [Given's] close buddies from the Hill" [*i.e.* Capitol Hill], she thinks that she can predict that PBS will be terminating its relationship with Lewis-Burke. Id.

There must have been an intervening phone call, because Givens refers to it and indicates that it was "concerning" the departure of Joel Widder from Lewis-Burke. Id. Givens then indicates that it is his understanding that "pursuant to Section 6 of our contract [i.e., between PBS and Lewis-Burke] we have concluded our relationship in a very amicable and professional manner." Id. Givens then conveys his belief that PBS is current on all of its outstanding balances and thanks Lewis-Burke's for all of its work on behalf of PBS. Burke then replies, within three minutes, that all of PBS's payments are current. Id.

First, Givens's e-mail is hearsay insofar as it is offered for the truth of its contents. Burke's e-mails are not hearsay because they are statements of a party or of the representative of a party. Fed. R. Evid. 801(d)(2).

Second, the relevance of Givens's e-mail is questionable. There is nothing in it from which a reasonable person could deduce that Burke was excusing or condoning any violation of Widder's contractual obligation to Lewis-Burke to neither solicit business from Lewis-Burke's

16

clients nor work for them after he left Lewis-Burke's employ. I appreciate that during his deposition Widder seemed to suggest that, although he never spoke to Burke, he somehow deduced from his conversations with Givens that his working for PBS had been excused by Burke in her conversations with Givens. But, clearly, what Givens may have told plaintiff is hearsay and Widder cannot testify to it.

B. Givens's Testimony

Widder adjures any reliance on out of court statements by Givens but plans to call him as a witness to establish that the departure of PBS from Lewis-Burke was not caused by Widder's departure and would have happened in any event. But, Widder ignores that the only evidence I presently have is Burke's e-mail of September 24, 2008 in which she directly attributes the loss of the PBS business to Widder's departure from Lewis-Burke, a statement perfectly consistent with a claim that Widder's departure caused the loss of the PBS business.

I emphasize that I am speaking only of the information I presently have. I do not know as much as I want to know about any conversations between Burke and Givens, or any other PBS representative, about the how, why, and ultimate effect of Widder's departure upon the termination of the relationship between PBS and Lewis-Burke. Subject to an additional discussion at the pre-trial conference and to a possible *voir dire* of the pertinent witnesses as to this question, out of the hearing of the jury, I will defer ruling on the relevance of the potential testimony I have summarized.

I should note in this context that I certainly appreciate Lewis-Burke's point that Widder violates the covenant by either soliciting PBS's business or working for PBS while employed by any one other than Lewis-Burke. Thus, how Widder's new firm got PBS's business may be

17

irrelevant, if Lewis-Burke presses only its contention that Widder's working for PBS was the violation of the covenant.

### C. Evidence Regarding Changes in Widder's Compensation

Another issue raised in plaintiff's motion *in limine* is the question of the relevance of any testimony from Widder about a diminution of his expected compensation and its relation to any alleged breach of his covenant not to compete. As Lewis-Burke correctly points out, the covenant not to compete is, by its stated terms, an integrated agreement. There is not a word in it about plaintiff's compensation that could be interpreted to mean that his compensation and the covenant not to compete were mutual obligations in that one was given in consideration of the other. Accordingly, any testimony about his compensation is irrelevant.

### IV. Conclusion

For the reasons stated herein, defendant's motion to dismiss plaintiff's CFAA claim will be granted. Plaintiff's motion to amend will also be granted. Defendant's motion to dismiss the case for lack of subject matter jurisdiction will be denied. Plaintiff's motion *in limine* will be denied in part and granted in part. A status conference and evidentiary hearing in this case will be set in a separate order. The parties should be prepared at the status conference to set a trial date in early October 2010.

A separate order accompanies this memorandum opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE